IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO.  11-CR-30150-WDS |
| | ) |
| TOMLIN COLEMAN, | ) |
| Defendant. | ) |

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

Before the Court is defendant's motion to suppress evidence and statements (Doc. 47), to which the government has filed a response (Doc. 49).  The Court held an evidentiary hearing on the motion, at which Illinois State Trooper Beau Marlow ("Trooper Marlow") testified.  The Court took the matter under advisement, and allowed the parties to submit briefs in lieu of closing arguments (Doc. 50).  The government submitted a brief (Doc. 53), to which the defendant filed a response (Doc. 54), and this matter is now ready for ruling.

## BACKGROUND

Defendant Tomlin Coleman was charged by a grand jury with knowingly and intentionally possessing with intent to distribute 100 kilograms or more of marijuana in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B).  The charge emanated from the discovery of marijuana in the bed of his truck following a traffic stop.

According to defendant, on August 29, 2011, Trooper Marlow stopped defendant's vehicle for the traffic violation of crossing the white line.  Defendant's vehicle was equipped with cameras, and he claims that the video evidence shows that he did not cross the white line. Defendant asserts that the traffic stop was not valid, and the officer did not, therefore, possess

probable cause to stop defendant's vehicle.

Defendant believes that the traffic stop would have been made whether there was a violation or not, based upon defendant's Florida license plates and the fact that he is a minority male. He notes that Trooper Marlow's vehicle was equipped with cameras which can record traffic stops, and there are videos of other stops Trooper Marlow made that day, but that "conveniently" Trooper Marlow's video equipment was not activated during defendant's stop.

At the hearing Trooper Marlow testified to the following: while driving on the interstate, he observed defendant's vehicle, a silver Ford F150 with Florida license plates, and noticed that the rear of the vehicle was level with the front of the vehicle. Trooper Marlow stated that the rear of this type of truck usually sits higher than the front of the vehicle, so he thought there might be something substantial in the bed of the truck. He was also suspicious of the fact that the bed of the truck had a cover over it, because, from his experience, the type of cover used by defendant is sometimes used to conceal drugs. Upon these observations, Trooper Marlow testified that he began looking for traffic violations.

Trooper Marlow drove his vehicle beyond defendant's, and then allowed defendant's vehicle to pass him. He stated that he did this so that he could observe the number of occupants in the vehicle and observe the occupant's reaction to the presence of law enforcement. After dropping back behind defendant's vehicle, he noticed that the defendant's license plate was obstructed by a license plate bracket and a ball hitch. A photograph of defendant's license plate was admitted into evidence. The photograph reflects that the license plate frame obstructs the letters indicating the Florida County name. The photograph does not reflect the Trooper's observation that the ball hitch obstructed the letters on the license plate, but Trooper Marlow explained that this was because the photograph was taken from an elevated position, which was

different from the position he was in while driving his vehicle. Trooper Marlow testified that at different positions around defendant's vehicle, different letters were obstructed by the ball hitch, depending on the angle from which the observer was looking.

Trooper Marlow testified that there are different types of hitches that can be attached to vehicles, including one that attaches to the frame of the truck instead of the bumper, and does not obstruct the license plate in any way. Trooper Marlow stated that the location of defendant's hitch violated Illinois law, namely, 625 ILCS 5/3-413(b), which requires that license plates be free from obstruction. He explained that any type of obstruction, even if it is not complete obstruction, could result in misreading an "I" as a "T" or a "B" or "P" as an "R." After stopping the defendant, Trooper Marlow issued a written warning for defendant's violation of 625 ILCS 5/3-413(b).

Next, Trooper Marlow testified that he also observed defendant violating 625 ILCS 5/12-503(c), which provides that a vehicle's windshield may not contain a material obstruction. Trooper Marlow stated that he observed something mounted on the bottom of the rear-view mirror, which he later discovered was a camera. Trooper Marlow did not issue a citation for this offense, however, and on cross-examination, Trooper Marlow stated that he did not include this observation in his written report.

Finally, Trooper Marlow testified that prior to his initiation of the stop of defendant's vehicle, he observed the defendant's right tires cross the white line and go onto the shoulder. Trooper Marlow testified that this action violated Illinois law, namely, 625 ILCS 5/11-709(a), in that the defendant failed to maintain one lane of traffic. Trooper Marlow issued a citation for defendant's violation of 625 ILCS 5/11-709(a).

With respect to the cameras mounted in Trooper Marlow's vehicle, he testified that

usually, when the emergency lights in his vehicle are switched on, the video recording activates to start recording. The Trooper can tell if his camera is activated because it usually makes a particular sound, but in this instance, when he turned his lights on, he did not hear that sound, and the camera did not turn on. He then pulled out the camera card and put it back in, in an attempt to get the camera working, but at this point, he was focused on the vehicle stop he had initiated. He testified that his camera was not on prior to the stop of defendant's vehicle. Trooper Marlow testified that it is not the custom or practice of his department to record traffic violations, and he would only do so on rare occasions.

Trooper Marlow testified that as he approached the defendant's vehicle, he observed the camera mounted on the rear-view mirror and one mounted on the passenger-side mirror. He stated that defendant only rolled the passenger side window half way down, which he found unusual. Trooper Marlow identified himself and then noticed a computer monitor and power strip on the floor of the vehicle, and a camera with a display hanging from the windshield. He asked the defendant for his license and paperwork, and observed that the defendant was agitated and he would not look directly at Trooper Marlow, but only look out of the corner of his eye. Defendant asked what violation he had committed, and Trooper Marlow responded that he pulled him over for improper lane usage. Defendant then acted extremely agitated and accused Trooper Marlow of being a racial profiler, told him that the particular stretch of interstate they were on was known for racial profiling, and then showed Trooper Marlow a warning citation he had received there previously. Defendant continued his racial profiling accusations, and Trooper Marlow responded that he was just issuing a warning. Defendant replied that he wanted a citation. Trooper Marlow returned to his squad car, called a canine unit, and ran a records check and criminal history check. While he was attempting to complete these tasks, the defendant stood

outside Trooper Marlow's passenger door, constantly talking to him about racial profiling.

About fourteen minutes after defendant was stopped the canine unit arrived, and after a free air sniff, the canine alerted to the presence of narcotics. At this point, Trooper Marlow testified that a probable cause search was performed, and he discovered a grey tarp covering black duffel bags carrying over 600 pounds of cannabis, which was seized. Defendant was arrested and Mirandized, but continued to speak to Trooper Marlow as he was transported to headquarters in the front passenger seat of Trooper Marlow's squad car. Defendant made a number of statements even after Trooper Marlow advised him not to talk. Defendant made statements regarding previous similar trips he had "gotten away with," and admitted that it was "weed, weed, weed. It's weed" in the back of his truck. The government played portions of an audio and video recording from Trooper Marlow's recording equipment, which apparently began operating after defendant's vehicle was stopped, and which corroborated Trooper Marlow's testimony describing the stop.

On cross-examination, Trooper Marlow testified that although the video footage and photograph of the ball hitch in front of the license plate do not make the main license plate number appear unreadable, both the video and photograph were taken from different angles than those from which he viewed the plate while driving. He testified that his car sits much lower than the defendant's truck, that the photograph and video do not accurately reflect vehicles in motion, and that while driving, the angle between himself and the license plate was constantly changing, and he could not see all pertinent parts of the plate at all times. He also testified that the defendant's race had no bearing on his decision to stop the defendant. In support of this fact, the government introduced Trooper Marlow's arrest statistics, compiled by Trooper Marlow himself. The statistics prepared by Trooper Marlow took into account every arrest he has ever made, 196

individuals in total, and provided that 54.5% were white, 29% were black, 15.3% were Hispanic, <1% were Asian, and <1% other.  (Doc. 49-3).  The defendant pointed out that these statistics were created by Trooper Marlow, and were not official records or statistics of the Illinois State Police.

Defendant introduced into evidence video footage from the defendant's vehicle, from a forward facing camera that recorded the road in front of the defendant's vehicle.  Upon viewing the video footage during the hearing, Trooper Marlow identified the point at which the defendant committed the traffic violation of crossing the white line onto the shoulder.  Defendant asserts that the footage shows that the defendant did not cross the white line.

Defendant asserts that the video evidence and photographs fail to support the conclusion that traffic violations occurred, in that the ball hitch did not obscure Trooper Marlow's ability to read the license plate, and that the video footage does not show that the defendant crossed the white line.  Defendant asserts that he did not commit a traffic violation, that no probable cause existed for the traffic stop, that the stop was therefore illegal, and that the resulting evidence and statements should be suppressed as fruit of the poisonous tree.

## LEGAL STANDARD

It is well settled that the Fourth Amendment to the United States Constitution "protects against warrantless intrusions by the government into areas in which [an] individual holds a reasonable expectation of privacy."  *United States v. Villegas*, 495 F.3d 761, 767 (7th Cir. 2007), *cert. denied*, 128 S.Ct. 939 (2008), *citing United States v. Yang*, 478 F.3d 832, 835 (7th Cir. 2007). The Fourth Amendment protects individuals from "unreasonable searches and seizures" conducted by the government when unsupported by probable cause. U.S. Const. **A**mend. IV. "When evidence is obtained in violation of the Fourth Amendment, the exclusionary rule

precludes the use of such evidence and its fruits in criminal proceedings against the victim of the violation." *United States v. Merritt*, 361 F.3d 1005, 1009 (7th Cir. 2004)**.**

It is also well settled that the commission of a traffic violation gives the officer probable cause to conduct a traffic stop. *United States v. Hernandez-Rivas*, 513 F.3d 753, 758-59 (7th Cir. 2008).

> Police can stop an automobile when they have probable cause to believe that the driver violated even a minor traffic law. *United States v. Muriel*, 418 F.3d 720, 724 (7th Cir. 2005) (citing *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)). Probable cause exists when an officer reasonably believes that a driver committed a traffic offense. *Id*. In addition, under *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), police may conduct a brief, investigatory traffic stop if they have reasonable suspicion based on articulable facts that a crime is about to be or has been committed. *United States v. Baskin*, 401 F.3d 788, 791 (7th Cir. 2005); *United States v. Wimbush*, 337 F.3d 947, 949–50 (7th Cir. 2003). A stop and search can be reasonable even if the defendant did not actually commit an offense as long as the officer reasonably believed an offense occurred. *United States v. Cashman*, 216 F.3d 582, 587 (7th Cir. 2000).

*United States v. McDonald*, 453 F.3d 958, 960 (7th Cir. 2006). The Seventh Circuit and the Supreme Court have repeatedly concluded that the subjective motivation of an officer is irrelevant to the Fourth Amendment analysis and that an ulterior motive, such as a narcotics search, does not render a traffic-violation arrest invalid. *Whren v. United States*, 517 U.S. 806, 812-13 (1996); *United States v. Taylor*, 596 F.3d 373, 377 (7th Cir. 2010) (citing cases); *United States v. Smith*, 668 F.3d 427, 430 (7th Cir. 2012).

## ANAYLSIS

Trooper Marlow testified that prior to stopping the defendant, he observed defendant committing three traffic violations: (1) defendant's rear license plate was obscured from certain angles by an improperly mounted ball hitch in violation of 625 ILCS 5/3-413(b) , and Marlow issued a written warning to defendant for this violation; (2) defendant's front windshield was

obscured by video recording equipment in violation of 625 ILCS 5/12-503(c), but Marlow did not issue a citation[1] on this basis; (3) "improper lane usage" in violation of 625 ILCS 5/11-709(a), and Marlow issued a written warning for this offense.

Regarding the first violation, pursuant to 625 ILCS 5/3-413(b):

> Every registration plate shall at all times be securely fastened in a horizontal position to the vehicle for which it is issued so as to prevent the plate from swinging and at a height of not less than 5 inches from the ground, measuring from the bottom of such plate, in a place and position to be clearly visible and shall be maintained in a condition to be clearly legible, free from any materials that would obstruct the visibility of the plate.

In this case, the traffic stop was reasonable because Trooper Marlow observed materials obstructing the visibility of the plate, namely, the license plate frame and the ball hitch. The language of the statute does not call for any particular degree of obstruction, or provide that certain information can be obstructed and not others, but simply, the plate must be free from *any* materials that would obstruct the plate.

The photograph shows that the license plate frame obstructs the county name, and the Court **FINDS** Trooper Marlow's testimony that particular parts of the plate were not visible from his position in his moving vehicle, depending on his location with respect to defendant's vehicle, to be credible. Upon consideration of the evidence, the Court further **FINDS** that Trooper Marlow reasonably believed defendant committed the traffic violation of obstructing his license plate. Trooper Marlow's admission that he was looking for a traffic violation and that he suspected drug trafficking is of no consequence to whether the traffic stop was lawful. *Taylor*, 596 F.3d at 377. Therefore, Trooper Marlow had probable cause to stop the vehicle and issue a citation for the violation.

---

[1] Defendant calls into question the second noted violation, in that Trooper Marlow did not issue a warning for this violation, nor did he make note of it in his report. The Court can make a determination based on the other two violations for which warnings were issued, however, without even considering the windshield obstruction violation, and need not consider it further.

Additionally, the traffic stop was reasonable based on defendant failing to maintain one lane of traffic. Pursuant to 625 ILCS 5/11-709(a): "[a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." The Court **FINDS** that the video footage from the defendant's car is not persuasive evidence of defendant's claim that he did not cross the white line and enter the shoulder. In fact, upon viewing the video footage, which does not show defendant's tires, it seems entirely plausible that defendant did cross the white line, as the vehicle appears to veer to the right. As stated above, however, the tires themselves are not visible, and without this view, the video certainly does not add credence defendant's claim that he *did not* cross the white line. The Court **FINDS** Trooper Marlow's testimony that defendant's vehicle crossed the white line, a violation for which Trooper Marlow issued a warning to the defendant, to be credible, and **FINDS** that he reasonably believed a violation occurred. Trooper Marlow had probable cause to stop the vehicle and issue a citation on this traffic violation as well.

Finally, while the defendant does not make a specific argument with respect to the total length of time of the traffic stop, in his motion to suppress, he alludes to the fact that the traffic stop was unlawful or unreasonable on this basis. In his brief, however, the defendant apparently concedes that, under the circumstances, the detention was not unreasonably long: "[d]efendant's conduct of continuing to talk to Trooper Marlow did contribute to any delay that occurred during the traffic stop. . . ." (Doc. 54).

## CONCLUSION

Trooper Marlow had probable cause on at least two separate bases to stop defendant's vehicle. The traffic stop was therefore lawful, and the evidence obtained as a result of the stop should not be suppressed as "fruit of the poisonous tree." Accordingly, defendant's motion to

suppress evidence and statements (Doc. 47) is **DENIED** on all grounds raised.


**IT IS SO ORDERED.**

**DATE: March 6, 2013**

                                                                    /s/   WILLIAM D. STIEHL
                                                                          **DISTRICT JUDGE**